## PEGG *v.* DAVIS.

If exceptions be taken to some parts of an answer in chancery, and the Court consider the exceptions valid, the defendant may be ordered to answer over so far as the exceptions extend, but he cannot be required to answer over generally.

If the answer to any particular charge in a bill be not sufficiently explicit, the complainant should file exceptions to that part of the answer; but if instead of doing that, he acquiesce in the answer, the charge must be proved or it will be disallowed.

If any particular claim in a bill be not answered, the complainant should insist on an answer, and if such answer be refused, he may take a decree *pro tanto* by confession; and then, if the charge is sufficiently explicit, it may be recovered without further proof. But should the complainant, instead of pursuing that course, bring the case to a hearing on the merits, he can only entitle himself to the claim by proving it.

If the charge in a bill be not stated with sufficient certainty, the complainant cannot, even after a decree *pro confesso,* have a final decree, unless he establish his demand by satisfactory evidence.

Nov. Term,
1829.

PEGG
v.
DAVIS.

Friday,
November 6.

ERROR to the *Franklin* Circuit Court.

BLACKFORD, J.—In *October*, 1822, *Pegg* filed a bill in chan-cery in the *Franklin* Circuit Court against *Davis;* and, in *Octo-ber*, 1823, he filed an amended bill. By these bills it appears, that the complainant and defendant had been partners in busi-ness at *Brookville*, as merchants and manufacturers. It is also shown, that they had made a final settlement of their partner-ship concerns, and had dissolved their partnership. The ob-ject of the suit was, among other things, that the settlement of the partnership accounts should be opened, in consequence of fraud; and that *Davis* should be compelled to account for part-nership funds, fraudulently applied by him to his own use. In *January*, 1824, *Davis* filed his answer; and, in *February* follow-ing, he filed a cross-bill. In *May*, 1824, *Pegg*, the complainant in the original bill, filed his answer to the cross-bill. In *July* and *August*, 1824, several depositions were taken in the cause. In *September* following, *Davis* filed an amended cross-bill; which was answered by *Pegg*. The latter also filed a supplemental bill; which, in *March*, 1825, was answered by *Davis*. At the *March* term, 1825, *Davis* filed exceptions to *Pegg's* answers to the cross-bill and amended cross-bill. And the Court, during the same term, made the following order: "On motion, the defen-dant, *John Pegg*, is ruled to answer over to complainant's cross-bill in 90 days, or decree to be entered thereon at the next term of this Court." The next proceeding in this cause, was the following order of reference, made at the *September* term, 1825: "On motion, this cause is referred to the master in chancery for a settlement of accounts between the said parties; who is required to report to the next term of this Court." At the *Sep-tember* term, 1826, the master reported, that there was a balance due to *Davis*, the defendant in the original suit, of 2,958 dol-lars. During the same term, no objection being made to the report, and the bills, answers, depositions, and exhibits, in the cause, having been examined by the Court, there was a final decree made that *Davis* recover the said sum of 2,958 dollars, found and reported by the master in manner aforesaid, together with costs.

*Pegg*, the complainant below in the original suit, appeals to this Court.

The general order, made by the Circuit Court at the *March*

term, 1825, that *Pegg* should answer over to the cross-bill of *Davis*, was incorrect. There are material parts of *Pegg's* answer to the cross-bill, to which *Davis* took no exception. Supposing, therefore, that all the exceptions are valid, it is clear that *Pegg* could not be required to answer over to the whole bill, but only so far as the exceptions to his answer extended. It is not necessary, however, to dwell upon this part of the case. This irregular order produced no injury to *Pegg*, the plaintiff in error, of which he can complain. No effort was made to enforce it. It remained a dead letter, not noticed either by the parties or by the Court. *Davis* may be considered as having abandoned the order, together with the exceptions which it was intended to sustain. We shall consider the case, therefore, as if there had been no order upon *Pegg* to answer over, nor any exceptions to his answer.

The master's report contains a long statement of the accounts between the parties. The two principal charges allowed by the master against *Pegg* are, one of 2,000 dollars, the other of 800 dollars. The following is a copy of the entry of these charges in the master's report: "To this amount of cash notes on hand, at the time of the dissolution of the partnership, which he, *Pegg*, is charged with having secreted; and his answer appears to be vague and uncertain,—2,000 dollars. To this amount in cash on hand, at the time of the dissolution of the partnership; to which the answer is vague and uncertain,—800 dollars." The record contains no proof of either of those charges. They were allowed by the master, as he himself particularly states, merely because they are contained in the bill, and the answer to them is vague and uncertain.

The statement in the amended cross-bill,—and it appears nowhere else,—as to the charge of 2,000 dollars, is as follows: "At the time of the dissolution of the said partnership, as your orator is informed and believes, the said *John Pegg* had cash notes to a large amount, say, 2,000 dollars, on divers individuals, payable to the said firm of *Pegg* and *Davis;* and which had been given by said persons on contracts to the use of said firm: which said notes the said *Pegg* at that time secreted and kept back, and has never to this day accounted to your orator for the same. Some of which said notes, the said *Pegg* afterwards assigned to third persons on his own individual contracts."

The answer of *Pegg* to this charge is as follows:—"This defendant says, that if, at the dissolution aforesaid, there were cash notes on hand belonging to the firm, they were honestly applied, so far as this defendant was concerned, to the payment of partnership debts; not a cent of which was ever applied to his own individual use without accounting therefor." In this answer of *Pegg*, there is certainly no admission of his ever having had any part of the 2,000 dollars in cash notes, with which he is charged; and he positively denies the appropriation of any of them to his own use as stated in the bill. There is nothing, therefore, in the answer, to warrant the allowance of this charge of 2,000 dollars. If the answer is not sufficiently explicit, *Davis* should have insisted upon his exceptions to it. That, however, as we have already shown, he failed to do. By acquiescing in the answer, he rested the fate of this charge upon the proof he might be able to adduce. But he produced no evidence to support it, and, consequently, had no right to the allowance.

The other item of 800 dollars is charged in the amended cross-bill as follows:—"At the time the said partnership was dissolved as aforesaid, the said plaintiff had on hand a large sum of money, as your orator is informed and believes, belonging to said firm, which he fails to account for, or pay over to your orator." To this claim of 800 dollars, the answer contains no particular notice. Whether, on account of the generality of the charge—no particular sum being mentioned—*Pegg* was authorised to pass it over in silence, is not now the question. It was the business of *Davis*, to insist upon an answer to this part of his bill, if he had a right to it; and, if the answer were refused, to take a decree *pro tanto* by confession. Then, if the charge is sufficiently explicit, he might have recovered it without the production of proof. That course, however, was not pursued. The case was brought to a hearing on the merits; and *Davis* could entitle himself to this charge of 800 dollars in no other way than by proving it. That he failed to do; and the allowance, therefore, should not have been made.

There is another view which may be taken of this subject. Admitting the order of the Court, requiring *Pegg* to answer over generally, to be correct; and supposing that, for the want of such answer, there had been a decree against him *pro confesso;*

even under those circumstances, *Davis* could not have recovered, without proof, either the charge of 2,000 dollars, or that of 800 dollars. The reason is, there is too much uncertainty in the statement of these charges in the bill. The first is, "of cash notes to a large amount, say, 2,000 dollars." Here, by the insertion of the word, *say*, the amount is rendered altogether uncertain. The second is, "of a large sum of money;" without the slightest reference to any definite amount. In such cases of uncertainty as to the allegations in a bill, the complainant, even after a decree *pro confesso*, can have no right to a final decree, unless he establish his demands by satisfactory evidence. This doctrine was lately examined by the Court of chancery in *New-York*, and may be considered as settled. *Williams* v. *Corwin*, 1 Hopkins' Rep. 471 (1).

From these considerations we are perfectly satisfied, that the decree in this case is incorrect, as regards the two principal items of the account allowed against *Pegg*. It was a great mistake to suppose that *Davis* could be entitled to them, independently of any evidence, merely because, in the language of the master, the answer respecting them was vague and uncertain.

It is not necessary that we should examine any further into the merits of this decree. It is evidently erroneous, and must be reversed. It has also been shown, that the order requiring a new answer generally to the cross-bill, was incorrectly made: that order, therefore, with the subsequent proceedings, must be likewise set aside. The cause must be remanded to the Circuit Court for further proceedings, with directions to permit the parties to amend their bills, answers, &c.; and to take further evidence, if they think proper.

*Per Curiam.*—The decree is reversed, &c. Cause remanded, &c.

*Lane* and *Fox*, for the plaintiff.

*Morris*, for the defendant.

(1) "When the allegations of a bill are distinct and positive, and the bill is confessed, such allegations are taken as true, without proof. Where the allegations of a bill are indefinite, or the demand of the complainant is in its nature uncertain, the certainty requisite to a proper decree must be afforded by proofs." Per *Sanford*, Chancellor, in *Williams* v. *Corwin*, cited in the text. Vide *Platt et al.* v. *Judson*, *May* term, 1833, post.